## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JAMES SCOTT WILBUR,       )
                              )
        Plaintiff           )
                              )      1:18-cv-00255-NT
v.                          )
                              )
JOSEPH FITZPATRICK, et al.,   )
                              )
       Defendants     )

## RECOMMENDED DECISION AFTER SCREENING COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e), 1915A, AND ON PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF

In this action, Plaintiff James Scott Wilbur, an inmate in the custody of the Maine Department of Corrections, alleges he was subjected to excessive force, abusive prisoner discipline, and inequitable and prejudicial disciplinary hearing practices by officers and administrators at the Maine State Prison.  (Complaint, ECF No. 1.)  In addition to filing a complaint, Plaintiff has requested a temporary restraining order or preliminary injunctive relief.  (Motions, ECF Nos. 6, 14.)

Plaintiff filed an application to proceed in forma pauperis (ECF No. 4), which application the Court granted (ECF No. 8).   In accordance with the in forma pauperis statute, a preliminary review of Plaintiff's complaint is appropriate.   28 U.S.C. § 1915(e)(2).  Additionally, Plaintiff's complaint is subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

1

Following a review of Plaintiff's complaint, as amended, I recommend the Court dismiss the complaint, except for Plaintiff's due process claim regarding the imposition of a fine following a disciplinary proceeding conducted at the prison, and for the excessive force and retaliation claims Plaintiff has asserted against certain defendants. I also recommend the Court deny Plaintiff's motions for injunctive relief. (Motions, ECF Nos. 6, 14.)

## STANDARD OF REVIEW

The federal in forma pauperis statute, 28 U.S.C. § 1915, is designed to ensure meaningful access to the federal courts for those persons unable to pay the costs of bringing an action. When a party is proceeding in forma pauperis, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In addition to the review contemplated by § 1915, Plaintiff's complaint is subject to screening under the Prison Litigation Reform Act because Plaintiff currently is incarcerated and seeks redress from governmental entities and officers. *See* 28 U.S.C. § 1915A(a), (c). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or

fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Although a pro se plaintiff's complaint is subject to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), this is "not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim, *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980). To allege a civil action in federal court, it is not enough for a plaintiff merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively allege facts that identify the manner by which the defendant subjected the plaintiff to a harm for which the law affords a remedy. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### FACTUAL BACKGROUND

Through his complaint and amended complaint, Plaintiff seeks to assert claims for cruel and unusual punishment, violation of procedural due process, unlawful search and seizure, and the use of excessive force. Plaintiff has joined more than twenty defendants in this action.

*Excessive punishment*

Plaintiff alleges that the Maine Department of Corrections maintains a flawed prison disciplinary policy because most of the conduct proscribed by the policy is classified as either a Class A or Class B offense, and the classifications carry the most severe potential punishments. According to Plaintiff, disciplinary charges too frequently result in excessive punishment. Among the punishments of particular concern to Plaintiff are the loss of privileges due to disciplinary sanctions, including cessation of good time credit accrual and bans against participation in programs and services. Plaintiff contends the disciplinary policy should be revised to classify fewer infractions as Class A or Class B, and to permit more infractions to be resolved informally. Plaintiff requests injunctive relief, which would include the creation of a new policy and redesign of the disciplinary board system. (Complaint ¶¶ 23 – 35, and pp. 15 – 17, ¶ B.1 – B.3.)

*Due process challenge*

Plaintiff asserts facts related to his personal experience with the disciplinary system. Under the caption, Excessive and Unsubstantiated Discipline, Plaintiff describes more than a dozen disciplinary reports asserted against him for a variety of proscribed conduct. (*Id.* ¶¶ 36 – 51.) Plaintiff asserts that none of his reports resulted in "informal" discipline.[1] (*Id.* ¶ 52.) As the result of the process, Plaintiff has, from time to time, been banned from accessing the Activities Building, been fined, lost access to the canteen, received extra work assignments in lieu of recreation, and lost the ability to earn good time credits. (*Id.*

---

[1] Plaintiff also states that certain reports resulted in not guilty findings (Complaint ¶¶ 38, 42, 49, 50), and that others resulted in no more than "a verbal reprimand." (*Id.* ¶¶ 46, 48.)

¶¶ 36 – 56.) Plaintiff also alleges that he "repeatedly" has been unable to attend religious services. (*Id.* ¶ 56.) Plaintiff further alleges that in June 2018, he lost his paid work assignment due to repeated write-ups. (*Id.* ¶ 57.)

Plaintiff alleges that the disciplinary process was deficient because disciplinary proceedings were not "initiated" within 24 hours (*Id.* ¶ 58); the allegations did not receive the approval of the reporting staff member's security supervisor (*Id.* ¶ 59); the disciplinary process did not include a description of the physical evidence or the "disposition" (*Id.* ¶ 60); and the disciplinary proceeding did not include the evidence and witnesses requested by Plaintiff. (*Id.* ¶¶ 58 – 61.)

Plaintiff also alleges he has a severe mental health issue, and that "[a]t no point in any of the disciplinary incidents … was mental health consultation sought with regard to the dispositions imposed as is required by the defendant's own policy." (*Id.* ¶ 62.) According to Plaintiff, Defendants Blakely, Abbott, Ross, and Liberty are responsible for these "failures." (*Id.*)

*Conduct of Defendants Chadwick and McConnell*

Plaintiff contends Defendants Chadwick and McConnell have issued Plaintiff, respectively, three and two disciplinary reports since January, 2018. (*Id.* ¶ 65.) According to Plaintiff, on four occasions, Defendant Chadwick conducted random cell searches of Plaintiff's cell. (*Id.* ¶ 67.) Plaintiff alleges Defendant McConnell has bypassed the chain of command to advise the coordinator of programs to terminate Plaintiff from his job assignment, and that Defendant Chadwick has used "de-escalation intervention" four times with Plaintiff since November, 2017. (*Id.* ¶¶ 68 – 70.) On June 12, 2018, Defendant

Chadwick confiscated a television from Plaintiff, citing poor disciplinary history. (*Id.* ¶ 71.)

*Relief requested*

Plaintiff alleges that the conditions imposed on him are cruel and unusual and were imposed without adequate procedural due process. (*Id.* ¶¶ 73 – 77.) Plaintiff requests declaratory relief stating that the Department's disciplinary policy and Defendants' conduct violated the Constitution, injunctive relief requiring the establishment of a new disciplinary policy, the expungement of his personal disciplinary record, and an award of money damages.

*Amended/supplemental pleadings*

In his amendment to the complaint, Plaintiff supplements his allegations regarding prior, unresolved disciplinary proceedings, and reports new disciplinary charges. (ECF No. 12.) In addition, Plaintiff alleges that after the filing of his complaint in this action, Defendant Chadwick and Defendant Charles Horton, a corrections officer, have undertaken disciplinary action against him, and that Defendant Horton physical assaulted him. Plaintiff further alleged that Defendant Chadwick confiscated or destroyed his religious materials. Plaintiff also alleged Defendant Jeremy Roberts, a correctional officer, harassed and discriminated against him.

**DISCUSSION**

**A.    Cruel and Unusual Punishment**

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth

Amendment." *Helling v. McKinney,* 509 U.S. 25, 31 (1993). "Undue suffering, unrelated to any legitimate penological purpose, is considered a form of punishment proscribed by the Eighth Amendment." *Kosilek v. Spencer,* 774 F.3d 63, 82 (1st Cir. 2014) (citing *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Under the Eighth Amendment, prison conditions cannot be inhumane, but they need not be comfortable. *Farmer v. Brennan*, 511 U.S. 825, 832 (1970). Cruel and unusual punishment consists of the denial of "the minimal civilized measure of life's necessities" assessed based on "the contemporary standard of decency." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state a claim, Plaintiff's allegations would have to support a plausible inference that the conduct of a particular defendant demonstrated deliberate indifference toward a prison condition that posed a substantial risk of serious harm, *Burrell v. Hampshire County,* 307 F.3d 1, 7 (1st Cir. 2002), or that the conduct was otherwise "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

Here, Plaintiff has not alleged sufficient facts to support an exhausted claim for cruel and unusual punishment.[2] The penalties imposed as the result of disciplinary proceedings and the resulting conditions of Plaintiff's confinement do not constitute conduct that is "repugnant to the conscience of mankind." (*Id.*)

---

[2] Because Plaintiff alleges that Defendant Horton physically assaulted him, Plaintiff conceivably asserts a claim for cruel and unusual punishment against Defendant Horton. As explained below, however, Plaintiff has not exhausted the administrative remedies available for the assault-related claim.

## B. Due Process

To state a due process claim, Plaintiff must allege facts that would support a determination that the procedural violation about which he complains resulted in an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court held that a 30-day period of segregated confinement did not amount to an atypical and significant hardship, where the conditions for inmates in general population also involved "significant amounts of 'lockdown time'." *Id.* at 486. Similarly, the Ninth Circuit has held that two weeks of administrative segregation was not a hardship. *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010).

Plaintiff principally complains of the temporary loss of privileges to attend activities in other locations within the prison, a temporary cessation in the accrual of good time credits, the denial of a paying job, and unspecified disciplinary "restrictions." The discipline cited by Plaintiff is the type that is typically imposed as a sanction for the violation of prison rules. Significantly, Plaintiff has not alleged facts that suggest he has been subjected to or will be subjected to a prolonged period of segregated confinement as the result of the allegedly flawed disciplinary process.

Plaintiff's contention that the Department of Corrections' disciplinary policy is unconstitutional also fails. "[W]ide-ranging deference" is accorded to prison administrators "in the adoption and execution of policies and practices that in their judgement are needed to ... maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321 – 22 (1986) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)) (internal quotation marks omitted).

Plaintiff has alleged no facts that would support a finding that the form or implementation of the disciplinary policy at the Maine State Prison is not rationally related to legitimate concerns for institutional security. For instance, the infractions with which Plaintiff was charged, such as providing a false statement, refusing to obey the rules or orders, leaving his place of assignment, threatening, theft, and provocation can objectively be considered as Class B and C disciplinary infractions.[3] The institutional concerns the infractions address plainly implicate prison security.[4]

As part of his claim, Plaintiff also alleges that on December 15, 2016, he received a disciplinary report for Disorderly Behavior and Equipment, and that he ultimately received a punishment that included a $100 fine. (Complaint ¶ 36.) Plaintiff asserts the disciplinary charge did not describe the evidence against him, and that he was denied access to the evidence and witnesses he requested for the hearing. (*Id.* ¶¶ 60 – 61.) Plaintiff contends Defendants Abbott, Theriault, Bueno, Blakely, and Ross are responsible for the deprivation

---

[3] The infractions are the majority of the infractions for which Plaintiff evidently received write-ups. The only Class A offense for which Plaintiff was sanctioned was Possession, Contraband, for which he lost privileges for ten days. (Complaint ¶¶ 36 – 51.)

[4] Plaintiff also appears to have intended to assert an action on behalf of or for the benefit of all prisoners in the Maine State Prison. (E.g., Complaint ¶ 29.) "The federal courts have consistently rejected attempts at third-party lay representation. By law an individual may appear in federal courts only pro se or through legal counsel." *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (citing *United States v. Taylor*, 569 F.2d 448, 450 – 51 (7th Cir.), *cert. denied*, 435 U.S. 952 (1978), and 28 U.S.C. § 1654). The law permits individuals who are not licensed to practice law to represent their own interests in federal court. 28 U.S.C. § 1654. An unlicensed individual, however, cannot represent other individuals in court. With few exceptions not applicable here, "[n]o person who is not a member in good standing of the bar of this Court shall appear or practice before this Court on behalf of another person …" D. Me. Local Rule 83.1(c); *see also Berrios v. New York City Hous. Auth.*, 564 F. 3d 130, 132-33 (2d. Cir. 2009) (explaining that 28 U.S.C. § 1654 does not permit unlicensed individuals to represent others in federal court); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (same). As a pro se litigant, Plaintiff cannot independently pursue an action on behalf of other individuals in this Court.

of his due process rights in connection with the charge. (*Id.*) Plaintiff in essence alleges he was deprived of his property without due process.

"To establish a procedural due process claim under [42 U.S.C.] § 1983, a plaintiff must [demonstrate] that [he] was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 29 (1st Cir. 2008). Ordinarily, a procedural due process violation is complete when a deprivation is imposed through an established state procedure that does not comply with constitutional procedural standards. *Godin v. Machiasport Sch. Dep't Bd. of Directors*, 831 F. Supp. 2d 380, 389 – 90 (D. Me. 2011); *see also Zinermon v. Burch*, 494 U.S. 113, 132 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.").

Postdeprivation remedies can in some situations cure a failure to observe procedural standards, but the situations are generally limited to "random and unauthorized" deprivations. *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 480 (1st Cir. 2012). Where the deprivation is the product of an established state procedure, such as a prison disciplinary hearing overseen by an authorized state official, the official's failure to follow a procedural standard cannot be characterized as random and unauthorized. *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992). At this stage of the proceedings, given that Plaintiff has alleged he was denied the opportunity to present certain evidence and witnesses at the disciplinary hearing that resulted in the loss of property (i.e., the fine

money), dismissal of Plaintiff's due process claim against Defendants Abbott, Theriault, Bueno, Blakely, and Ross regarding the fine is not warranted.

## C.    Search and Seizure

The United States Supreme Court has held that prisoners have no reasonable expectation of privacy with respect to searches and seizures of their effects. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984); *see also id.* at 527 – 28 ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."). Because the Fourth Amendment neither guarantees prisoners the right to possess or retain property free from interference by prison administrators, nor requires a reasonable basis for the seizure of prisoner's possessions, Plaintiff has failed to state an actionable claim for violation of the Fourth Amendment.

## D.    Other Potential Federal Claims

In his filings, Plaintiff suggested he has a mental health condition that has not been appropriately considered during the disciplinary proceedings. Plaintiff further alleges that he was repeatedly deprived of access to religious services because of the temporary restrictions on his privileges. Although Plaintiff has not articulated any specific related claims, or properly asserted the claims against any particular defendants, because federal law prohibits disability discrimination and undue burdens on religious practices, this recommended decision will address the potential claims generated by Plaintiff's allegations.

### 1. *Disability discrimination*

The Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 "provide, in nearly identical language, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014).[5]

Disability discrimination can consist of (a) the imposition of adverse consequences on a prisoner based on the prisoner's disability, (b) a prison policy that is neutral in its terms, but impacts prisoners with a disability more significantly, or (c) the refusal by the prison administrators to grant the prisoner a reasonable accommodation so that the prisoner can have meaningful access to a prison program or service. *Id.* To state a claim, a plaintiff must provide a short and plain statement that identifies the disability and the relationship between the disability and the policy or practice on which the discrimination claim is based. *See*, *e.g.*, *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006) ("To state a claim for a violation of Title II [of the ADA], a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated

_____

[5] Title II prohibits such conduct by public entities. 42 U.S.C. § 12132. Title III prohibits discrimination in places of public accommodation. 42 U.S.C. § 12182(a). Section 504 of the Rehabilitation Act prohibits discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a). The Supreme Court has observed that "[m]odern prisons provide inmates with many recreational activities, medical services, and educational and vocational programs, all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be excluded from participation in)." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998) (some internal quotation marks omitted).

against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his disability.").

In this case, Plaintiff has alleged that he has a condition that requires clinical intervention and treatment, and that he never received "mental health consultation" as part of the dispositional process. (Complaint ¶ 62.) Plaintiff's has not alleged facts to support a disability claim. In particular, Plaintiff has not adequately alleged the way his mental health condition impacted or should have impacted Defendants' conduct, nor has Plaintiff alleged any facts to suggest Defendants treated Plaintiff differently because of his condition.

### 2. *Religious practice*

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person − (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). "[A] RLUIPA plaintiff bears the burden of demonstrating that he or she wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief,

which exercise (3) is subject to a substantial burden imposed by the government." *LeBaron v. Spencer*, 527 F. App'x 25, 28 (1st Cir. 2013) (quotation marks omitted).

RLUIPA provides an inmate with a claim "against a government," but does not authorize an "individual capacity" claim against the individual defendants. 42 U.S.C. § 2000cc–1(a). Although the statutory definition of "government" includes "any ... person acting under color of State law," the Act does not authorize individual capacity liability as under section 1983. *Stewart v. Beach*, 701 F.3d 1322, 1334 – 35 (10th Cir. 2012) (citing additional circuit court authority and explaining that RLUIPA was enacted pursuant to Spending Clause authority, and therefore does not run against individual government employees except in their official capacities).[6] Furthermore, even against an institutional defendant, RLUIPA does not authorize a claim for money damages. *Sossamon v. Texas*, 563 U.S. 277, 293 (2011); *Reese v. Bouffard*, No. 1:14-cv-00244-GZS, 2015 WL 1947192, at *7, 2015 U.S. Dist. LEXIS 10093, at *16 (D. Me. Jan. 28, 2015) (recommended decision), *aff'd* (Apr. 29, 2015).

In this case, Plaintiff has not directly asserted a RLUIPA claim, but he has alleged an inability to attend religious services while subject to disciplinary restrictions. Had Plaintiff intended to or were Plaintiff to attempt to assert a RLUIPA claim, the claim would be against an officer who, in his or her official capacity, would have the authority to provide any injunctive relief that might be ordered. Presumably, the parties with the authority in this case would be the Commissioner of the Department of Corrections (Joseph Fitzpatrick)

---

[6] In *Kuperman v. Wrenn*, 645 F.3d 69, 79 (1st Cir. 2011), the First Circuit reserved ruling on the issue.

and/or the Warden of the prison (Randall Liberty). In his complaint, Plaintiff alleges that Abbott, Blakely, Rhodes, and Doyle are responsible for denying him access to religious services. (Complaint ¶ 56.) He thus has not alleged a claim against the proper defendants. In addition, he has not alleged that he ever requested any individual with authority arrange for his access to religious services.[7] Plaintiff, therefore, has not asserted an actionable claim under RLUIPA.

An inmate may also assert a claim for deprivation of religious freedom under 42 U.S.C. § 1983, based on the protection afforded under the First Amendment, and such a claim would run against individual officers. "Inmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal quotations and citations omitted). To state such a claim, Plaintiff must allege facts to suggest that defendants coerced him to engage in a particular religious practice, *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 46 (1st Cir. 2016), treated him unfavorably based on animosity toward his religion, *Kuperman v. Wrenn*, 645 F.3d 69, 77 – 78 (1st Cir. 2011)

---

[7] While physical presence at a service may be denied for disciplinary reasons, other arrangements may be required to facilitate religious observation. *See*, *e.g.*, *Hudson v. Dennehy*, 538 F. Supp. 2d 400, 412 (D. Mass. 2008), *aff'd sub nom. Crawford v. Clarke*, 578 F.3d 39 (1st Cir. 2009). However, unless defendants are made aware of a prisoner's contention that a prison policy or practice is burdening the prisoner's religious practice, such as through grievance procedures, their failure to act would not be a basis for institutional liability. Indeed, absent notice through the grievance procedure, the claim would be barred for failure to exhaust administrative remedies. 42 U.S.C. § 1997e(a) (PLRA) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."), 2000cc–2(e) (RLUIPA) ("Nothing in this Act shall be construed to amend or repeal the Prison Litigation Reform Act of 1995 ..."); *Cutter v. Wilkinson*, 544 U.S. 709, 723 n.12 (2005).

or denied him access to religious services on grounds not "reasonably related to legitimate penological interests." *Id.* at 74.

In this case, Plaintiff has simply broadly alleged that certain defendants have denied him access to attend religious services and other faith activities as the result of the restrictions imposed following disciplinary proceedings. (Complaint ¶ 56.) In other words, based on Plaintiff's allegations, the alleged limitation on Plaintiff's religious activity is a consequence of the temporary restrictions imposed as part of the disciplinary process. Plaintiff's allegations thus would not support a finding of religious coercion, discrimination based on religion, or a disciplinary restriction not reasonably related to a legitimate penological interest.

### 3. Excessive Force/Retaliation

Plaintiff has asserted facts that would support a claim of excessive force (Amendment to Complaint, ¶ D.2)[8] against Defendant Horton, and a claim for retaliation against Defendants Chadwick and Horton, based on their alleged actions upon learning of this civil action.[9] Plaintiff, however, asserted his claim almost immediately after the

---

[8] Because Plaintiff is serving a sentence following conviction, Plaintiff's claim is governed by standards developed under the Eighth Amendment Cruel and Unusual Punishments Clause. *Wilson v. Seiter*, 501 U.S. 294, 296 (1991). "Generally speaking, after incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. The critical question ... is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than in a good-faith effort to maintain or restore discipline." *Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005) (quotation marks and citation omitted).

[9] To support a claim of first amendment retaliation, an inmate must establish (1) that the inmate engaged in conduct protected by the First Amendment; (2) that the defendant took adverse action against the inmate because of the protected conduct; and (3) that the adverse action was more than de minimis, i.e., was sufficient to deter an inmate of ordinary firmness from exercising his or her first amendment rights. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011); *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999). "[T]his objective test applies even where a particular plaintiff

conduct about which he complains occurred. Plaintiff filed his motion to amend his complaint on July 19, 2018, and the alleged conduct began on July 7, 2018. Plaintiff further alleged the "incidents are still pending." (Amendment to Complaint ¶¶ B.1 – B.2.)

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit asserting violations of federal law. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* Ordinarily, failure to exhaust is treated as an affirmative defense

---

was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004); *see also Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 82 (D. Me. 2013).

and dismissal at the pleading stage is not warranted. However, "[a] court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) (vacating sua sponte dismissal where the prisoner plaintiff alleged that he attempted to exhaust, and appealed the dismissal of his grievance to the highest level, which allegations permitted an inference that he exhaust administrative remedies); *Torns v. Mississippi Dep't of Corr.*, 301 F. App'x 386, 388 – 89 (5th Cir. 2008) ("One way in which a complaint may show the inmate is not entitled to relief is if it alleges facts that clearly foreclose exhaustion. In such a case, the district court may sua sponte dismiss the complaint for failure to state a claim.") (vacating sua sponte dismissal where the allegations did not mention the administrative process and simply stated administrators did not respond); *Cullinan v. Mental Health Mgmt. Corr. Servs.*, *Inc.*, No. 11-cv-10593, 2012 WL 2178927, at *3 (D. Mass. June 11, 2012).

The Tenth Circuit and the Fourth Circuit have observed that when a prisoner's complaint clearly reflects that the prisoner did not exhaust administrative remedies, the district court should inquire further of the prisoner before screening the complaint based on non-exhaustion under 28 U.S.C. §§ 1915 and 1915A. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (suggesting that a district court may request additional information from prisoner where the face of the complaint clearly reflects non-exhaustion, noting that "facts ordinarily pled in allegations concerning prison conditions frequently will not give a definitive answer as to whether a prisoner has completed his internal grievance process or whether he was thwarted in his attempts to do so"); *Anderson*

*v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005) ("[W]e conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.").

A review the record reveals that Plaintiff likely did not have time to exhaust the administrative remedies between the time of the alleged conduct (July 7) and the date he signed the amendment to the complaint (July 16). Plaintiff's recently-asserted claims, therefore, are likely unexhausted at the administrative level. Plaintiff cannot pursue his claims in this Court unless and until he has exhausted the available administrative process.[10] Accordingly, absent evidence that Plaintiff exhausted the available administrative remedies, or an explanation from Plaintiff that would excuse Plaintiff from exhausting the available administrative remedies, the dismissal without prejudice of Plaintiff's excessive force and retaliation claims would be appropriate.[11]

---

[10] In the context of employment discrimination claims asserted under Title VII, the failure to exhaust administrative remedies is excused with respect to a claim of retaliation, "so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency." *Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001) (applying 42 U.S.C. § 2000e-5(e)(1)). In the context of prison litigation, however, the Supreme Court has held that the courts are not at liberty to fashion exceptions to the administrative exhaustion requirement set forth in the PLRA, 42 U.S.C. § 1997e(a). *Ross v. Blake*, 136 S. Ct. 1850, 1856 – 57, 195 L. Ed. 2d 117 (2016).

[11] The dismissal would be without prejudice to permit Plaintiff to pursue the claim upon completion of the administrative process.

## CONCLUSION

Based on the foregoing analysis, after a review pursuant to 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(a), I recommend the Court dismiss Plaintiff's complaint, as amended, except for Plaintiff's due process claim against Defendants Abbott, Theriault, Bueno, Blakely, and Ross regarding the imposition of a $100 fine following a disciplinary proceeding, and for Plaintiff's excessive force claim against Defendant Horton and Plaintiff's retaliation claim against Defendants Horton and Chadwick.[12]

As to Plaintiff's excessive force and retaliation claims, I recommend the Court order Plaintiff to provide any information that shows he exhausted or might have exhausted the available administrative remedies, or that for some reason he is not required by law to exhaust the available administrative remedies. In the event Plaintiff fails to provide information, I recommend the Court dismiss the claims without prejudice.

Plaintiff has also filed two motions for preliminary or temporary injunctive relief. (Motions, ECF Nos. 6, 14.) Essentially, Plaintiff asks the Court to order the prison to alter its disciplinary process, or to cease alleged conduct that is the subject of claims that would be dismissed if the Court adopts this recommended decision. Because Plaintiff has failed to allege facts that would support a successful challenge to the constitutionality of the prison disciplinary process, and because, if the Court adopts this recommended decision, Plaintiff's claim in this action would be limited to whether Plaintiff was unlawfully

---

[12] To the extent Plaintiff intended to assert a state law claim, Plaintiff has failed to assert any facts that would support a claim within the Court's diversity jurisdiction, nor has he asserted a claim over which the Court should assert pendent jurisdiction given the narrowness of the due process claim.

deprived of his property (i.e., the amount assessed as a fine), Plaintiff is not entitled to the requested preliminary or temporary injunctive relief.[13]  Accordingly, I recommend the Court deny Plaintiff's motions for injunctive relief.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of August, 2018.

---

[13] When evaluating a request for injunctive relief, courts "must consider (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest."  *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir. 1996) (citing *Weaver v. Henderson,* 984 F.2d 11, 12 &n.3 (1st Cir. 1993), and *Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir. 1991)). "The sine qua non of this four-part inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).  Plaintiff has failed to demonstrate a likelihood of success on any claim related to his request for injunctive relief.