UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES SCOTT WILBUR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:18-cv-00255-NT |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

## RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT

In this action, Plaintiff, an inmate at the Maine State Prison, alleges that Defendants, officials with the prison, impermissibly fined him and subjected him to excessive force. (Complaint, ECF No. 1; Amendments to Complaint, ECF No. 12.) The matter is before the Court on Defendants' motion for summary judgment. (Motion, ECF No. 24.)

Following a review of the summary judgment record and after consideration of the parties' arguments, I recommend the Court grant in part and deny in part Defendants' motion.

### PROCEDURAL HISTORY

On June 29, 2018, Plaintiff filed a complaint against more than twenty defendants alleging cruel and unusual punishment, violations of procedural due process, and unlawful search and seizure. (Complaint, ECF No. 1.) On July 19, 2018, Plaintiff amended his complaint to add claims based on an alleged use of excessive force and retaliation. (Amendments to Complaint, ECF No. 12; Order, ECF No. 13.)

On October 12, 2018, the Court dismissed most of the claims against most of the named defendants. (Order, ECF No. 17.) The Court determined, however, that Plaintiff's allegations against Defendants Abbott, Theriault, Bueno, Blakely, and Ross regarding the imposition of a $100 fine following a disciplinary proceeding could proceed. (*Id.*) The Court also permitted Plaintiff to continue, at least initially, on his excessive force claim against Defendant Horton and on his retaliation claim against Defendants Horton and Chadwick. (*Id.*) The Court ordered Plaintiff to provide information regarding his efforts to exhaust the available administrative remedies. (*Id.*)

On November 20, 2018, Plaintiff filed records of his efforts in connection with the prison grievance process. (Grievance Records, ECF No. 18-1.) On November 27, 2018, the Court concluded that Plaintiff could pursue his claims based on the $100 fine and excessive force, but the Court dismissed the retaliation claim because Plaintiff did not produce evidence that he exhausted the available remedies for that claim. (Order, ECF No. 19.)

Defendants filed their motion for summary judgment on February 12, 2019. (Motion, ECF No. 24.)

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact

reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b) – (d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules.[1]

---

[1] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that '[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to

*Ruiz Rivera v. Riley*, 209 F.3d 24, 27 – 28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). If an additional statement is introduced by the non-moving party, the moving party must file a reply statement in which it admits, denies, or qualifies the non-moving party's additional statements by reference to each numbered paragraph, with citations to supporting evidence. D. Me. Loc. R. 56(d).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent

---

such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

4

duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

Nevertheless, the factual assertions contained in the verified pleadings and affidavits filed by a pro se litigant generally will be considered in the review of a summary judgment motion. That is, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128 – 30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'" (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182 – 83 (D. Me. 2007).

**FACTUAL BACKGROUND**[2]

**A. The Parties**

Plaintiff is an inmate at the Maine State Prison. (Complaint ¶ 2.) Defendant Horton is a correctional officer at the Maine State Prison. (Complaint Amendments ¶ A-2.) Defendant Abbott is the Disciplinary Hearing Officer. (Complaint ¶ 8.) Defendant Theriault is the Training Captain. (*Id.* ¶ 11.) Defendant Bueno is the Maine State Prison Training Director. (*Id.* ¶ 10.) Defendant Blakely is the Medium Unit Manager and has

---

[2] The following facts are drawn primarily from Defendants' statements of material facts. Plaintiff filed a memorandum in opposition to the motion, but he did not file a response to the factual assertions contained in Defendants' statement. Given the failure to respond, Plaintiff's ability to contest Defendants' factual assertions is limited to statements contained in his pleadings, which Plaintiff signed under penalty of perjury, and the exhibits already entered into the record.

5

managerial responsibility over all operations in the Medium Housing Unit at the Maine State Prison. (*Id.* ¶ 9.) Defendant Ross is the Deputy Warden of Security. (*Id.* ¶ 5.)

**B.    The Disciplinary Fine**

On December 15, 2016, Defendant Abbott issued a disciplinary report to Plaintiff for two infractions, "Disorderly Behavior" and "Equipment." (Complaint ¶ 36.) Plaintiff was alleged to have scanned an inappropriate image onto an inmate-operated computer. (*Id.*) On the same day, Plaintiff wrote to a staff member and took responsibility for the image. (Defendants' Statement of Material Fact ¶ 2, ECF No. 25., hereinafter DSMF). Defendant Abbott interviewed Plaintiff to determine whether Plaintiff was coerced into making the statement. (*Id.*) Defendant Abbott decided that Plaintiff was not coerced. (*Id.*)

On December 29, 2016, Plaintiff pleaded guilty to the violations at a disciplinary hearing. (*Id.* ¶ 3.) Plaintiff did not ask to call any witnesses to testify at the hearing. (*Id.* ¶ 4.) After the hearing, Plaintiff was sanctioned with a loss of canteen privileges for twenty days, a loss of thirty days good time credit, and a monetary penalty of $100. (*Id.* ¶ 3; Complaint ¶ 36.) Plaintiff waived his right to appeal the sanctions. (*Id.* ¶ 3.)

**C.    The Use of Force**

Plaintiff alleges that on July 7, 2018, while Plaintiff was in mechanical restraints, Defendant Horton hit Plaintiff's head against a concrete wall. (Amendments to Complaint ¶ D-2; DSMF ¶ 5.) Plaintiff suspected that Defendant Horton was frustrated by Plaintiff's use of profanity directed at Defendant Horton. (Defendants' Grievance Records at 1, ECF No. 25-4.) Plaintiff claimed that security camera footage would refute Defendant Horton's assertion that Plaintiff resisted Defendant Horton's orders. (*Id.*) Plaintiff claims he

6

suffered headaches and vision problems as the result of the incident. (Amendments to Complaint ¶ D-2.)

On July 13, 2018, the Grievance Review Officer received Plaintiff's written grievance concerning Defendant Horton's conduct. (DSMF ¶ 5; Plaintiff's Grievance Records at 1; Defendants' Grievance Records at 2.) The Grievance Review Officer requested and received information from the Unit Manager, Defendant Blakely. (*Id.* ¶ 6.) On August 15, 2018, after reviewing the evidence regarding the alleged use of force, the Grievance Review Officer denied Plaintiff's grievance. (*Id.*; Plaintiff's Grievance Records at 2; Defendants' Grievance Records at 3.) Under the prison's grievance policy, Plaintiff had fifteen days from the date of the denial to file an appeal to the Warden. (DSMF ¶ 7.)

Plaintiff completed a grievance appeal form and signed and dated it August 26, 2018. (Plaintiff's Grievance Records at 3; Defendants' Grievance Records at 4.) On September 30, 2018, Plaintiff submitted a "Request for Interview or Information" slip to the Grievance Review Officer. (Plaintiff's Grievance Records at 4.) Plaintiff inquired as to the status of his appeal, which Plaintiff said that he submitted "on 8/26/18 and still have not received a response. It seems like an unnecessary delay." (*Id.*) Plaintiff also included an excerpt of the prison grievance policy which says that prisoners should receive a response within twenty-five days. (*Id.* at 5.)

On November 16, 2018, Plaintiff received notice that his appeal had been denied as untimely because it was filed after the expiration of the fifteen-day appeal period. (Defendants' Grievance Records at 4 – 5.) Defendants' copy of the appeal document was stamped in the upper right corner with the date August 31, 2018 as the "date received" by

7

the Grievance Review Officer; August 31 was one day after the deadline. (*Id.* at 4.) The Grievance Review Officer's signature on the denial is dated September 14, 2018. (*Id.* at 5.) Plaintiff maintains that he submitted the appeal well within the fifteen-day period by dropping the document in the in-house mailbox as required; Plaintiff argues that he has no control over any delay from that date and the date the Grievance Review Officer receives the document. (Plaintiff's Opposition, ECF No. 27.)

## DISCUSSION

**A.    Exhaustion of Administrative Remedies Regarding Excessive Force**

Defendants argue that Plaintiff's excessive force claim is barred because Plaintiff failed to exhaust the available administrative remedies. Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.")

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Id.* at 216; *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, the defendant bears the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, a defendant must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir.) (en banc), *cert. denied sub nom.*, *Scott v. Albino,* 135 S. Ct. 403 (2014). Thereafter, the plaintiff must present evidence that demonstrates "that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Exhaustion is required even though the prisoner's suit seeks monetary damages that are not available through the prison's grievance process. *Booth v. Churner*, 532 U.S. 731, 734 – 35 (2001). Exhaustion is also required even though the claim raises constitutional claims, such as claims alleging excessive force by prison officials. *Woodford*, 548 U.S. at 91 n.2; *Porter*, 534 U.S. at 520. However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 136 S. Ct. 1850, 1855, 195 L. Ed. 2d 117 (2016). Thus,

9

"an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). In *Ross,* the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.*

"First, … an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* (citing *Booth*, 532 U.S. at 736, and providing as examples a situation in which a handbook tells prisoners to send a grievance to an officer who then "disclaims the capacity to consider the grievance," and a situation where "administrative officials have apparent authority, but decline ever to exercise it"). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* In other words, a process that, viewed objectively, is too confusing to understand, is not an available process. *Id.* Third, an otherwise available grievance process is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. [3]

In this case, the record contains conflicting evidence regarding the timeliness of Plaintiff's administrative appeal. Plaintiff's dated signature and near contemporaneous

---

[3] In *Ross*, the Supreme Court remanded the case for further proceedings where the record suggested that the commencement of an investigation into prisoner abuse by the prison's Internal Investigation Unit cut off any further processing of the prisoner's related prisoner grievance and foreclosed his access to any relief through that process. 136 S. Ct. at 1860 – 62.

statements in the information request slip suggest he submitted the appeal on or around August 26, four days before the deadline. Plaintiff asserts he used the proper means to file the appeal when he placed the form in the in-house mailbox. Defendants do not directly address Plaintiff's contention regarding the date he placed the form in the prison mail; instead, Defendants rely on the "Date Received" stamp, and argue that the prison's grievance policy requires that the Grievance Review Officer receive the appeal before the deadline.

The policy, however, requires that the appeal be "filed" within the fifteen-day period. Prisoner complaints are ordinarily "filed" on the date the documents are placed into the prison mailbox. *See Morales-Rivera v. United States*, 184 F.3d 109, 109 (1st Cir. 1999) ("We hold that a pro se prisoner's motion under 28 U.S.C. § 2255 or § 2254 is filed on the date that it is deposited in the prison's internal mail-system for forwarding to the district court"). Courts adopt this interpretation of prisoner filing dates because prisoners have no control over processing delays that occur after the documents are placed into the prison mailbox and because prisoners have no other options for filing documents. *See Houston v. Lack*, 487 U.S. 266, 273 – 74 (1988). Where a prisoner placed documents in the prison mail within the applicable time period, but the documents are subsequently delayed or lost, courts have declined defendants' efforts to dismiss the filings as untimely. *See Dole v. Chandler*, 438 F.3d 804, 810 – 13 (7th Cir. 2006).[4]

---

[4] If Defendants' interpretation of the filing date were correct, it would raise questions as to the "availability" of the administrative remedy under *Ross*, undermining the propriety of summary judgment in this situation. If a fifteen-day deadline for an appeal were subject to reductions for significant processing delays on either or both ends, the process could be viewed as practically unavailable from an objective viewpoint.

In short, a genuine dispute of material fact exists as to the timeliness of Plaintiff's appeal. Because Defendant Horton does not in the summary judgment filings otherwise challenge Plaintiff's allegations about the use of force, Defendant Horton is not entitled to summary judgment on the excessive force claim.

**B.    Due Process Claim Regarding the Fine**

The Fourteenth Amendment provides that states cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. "[W]hile persons imprisoned for crime enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984).

With respect to liberty interests while in prison, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242 (1976). For example, to raise a due process concern over a deprivation of liberty, a prisoner's complaint must describe an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (holding that prisoner placed in segregation for 30 days did not experience "a major disruption in his environment").

"Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits

and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). With respect to prison monetary penalties, "an inmate has a property interest in the balances held in his accounts." *Young v. Wall*, 642 F.3d 49, 53 (1st Cir. 2011).

Due process requires that an inmate who is to be deprived of an interest protected by the Due Process Clause first receive: (1) advance written notice of the charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense, and (3) a written statement from the factfinder of the evidence relied upon and the reason for the disciplinary action. *See Superintendent v. Hill,* 472 U.S. 445, 454 (1985). There must also be "some evidence in the record" to support a disciplinary finding. *Id.*

The undisputed record establishes that Plaintiff received all the process that was due. He had advanced notice of the alleged offense, and he had the opportunity to call witnesses. Plaintiff opted to admit the offense and waive his right to appeal from the final decision. Under the circumstances, Plaintiff cannot prevail on a due process claim. Accordingly, Defendants are entitled to summary judgment on the due process claim based on the imposition of the disciplinary fine.

## Conclusion

Based on the foregoing analysis, I recommend the Court deny the Motion for Summary Judgment (ECF No. 24) as to the excessive force claim against Defendant

Horton.[5]  I also recommend the Court grant the motion as to the remaining Defendants and the due process claim.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[5] If the Court adopts the recommendation, the issues become at which stage of the proceedings the defense of failure to exhaust administrative remedies should be determined, and whether the facts pertaining to that defense should be decided by the Court or by a jury.  Circuit courts to consider the issue have concluded that judges are to decide disputed factual questions regarding exhaustion before the jury resolves any factual questions pertaining to the merits of the claims.  *See Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008) (en banc); *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008) (judges can resolve exhaustion questions "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record"); *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010) (same); *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute.  In such cases, the Seventh Amendment is not violated"); *Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013) (same); *Albino v. Baca*, 747 F.3d 1162, 1170–71 (9th Cir. 2014) ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue"); *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015) ("[D]isputed issues of fact regarding exhaustion under the PLRA present[ ] matter[s] of judicial administration that c[an] be decided in a bench trial").

In a leading case on the issue, the Seventh Circuit outlined the process that trial courts should follow "in the ordinary case."  *Pavey*, 544 F.3d at 742.  "The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate."  *Id.*  "If the judge determines that the prisoner did not exhaust his administrative remedies" the prisoner either "must go back and exhaust" if still permissible, or else "the case is over."  *Id.*  "If . . . the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies."  *Id.*  The Third Circuit requires that the district court "notify the parties that it will consider exhaustion in its role as a fact finder" and provide "an opportunity to respond" but cautions that "a full-scale evidentiary hearing (i.e. involving live testimony) is not required each time that a prisoner claims that he exhausted his administrative remedies."  *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018).  "Surely some cases will need a full-scale hearing, however, we leave that to the discretion of the district courts."  *Id.*

If the Court adopts the recommendation, therefore, further process on the exhaustion issue would be necessary before the case proceeds on the merits.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of April, 2019.