UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES S. WILBUR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:18-cv-00255-NT |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANT CHARLES HORTON'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORADUM OF LAW**

Pursuant to Fed. R. Civ. P. 56, Defendant Charles Horton moves for summary judgment in his favor on Plaintiff's excessive use of force claim.  As grounds therefor, Defendant states that there is no issue of material fact and that Defendant is entitled to judgment as a matter of law.

**MEMORANDUM OF LAW**

In this matter, Plaintiff James Wilbur, a prisoner incarcerated at the Maine State Prison, brought a complaint against twenty-one defendants where he alleged, among other things, inequitable disciplinary practices, that his rights to due process had been violated, and that he had been subjected to cruel and unusual punishment, including a claim against Defendant Horton that Defendant had used excessive force against him.  (Docket # 1, 12, 13.)  Following the Court's initial screening of Plaintiff's complaint and amended complaint, and the Court's ruling on Defendants' first motion for summary judgment, the only claim remaining in this matter is Plaintiff's excessive use of force claim against Defendant Horton.  (Docket # 15, 17, 29, 30.)

Plaintiff's remaining claim arises from an incident in July of 2018 in which Plaintiff engaged in an escalating course of verbally and physically defiant conduct towards Defendant

1

Horton, who then a corrections officer at the prison, ultimately forcing Horton to press Plaintiff against a wall in order to immobilize him while he waited for back-up to arrive. Plaintiff claims that Horton violated the Eighth Amendment during the altercation by causing Plaintiff to hit his head against the wall.

Defendant Horton is entitled to summary judgment for two reasons:

First, he is entitled to qualified immunity. Defendant did not violate Plaintiff's constitutional rights, as his use of force against Plaintiff was permissible and was not excessive under the Eighth Amendment. Defendant Horton acted with the intent to maintain order and security in the prison, and he did not act with sadistic or malicious intent for the very purpose of causing harm to Plaintiff. In addition, even assuming *arguendo* that Defendant did violate Plaintiff's right to be free from cruel and unusual punishment, the issue becomes whether that right was clearly established at the time of Defendant's alleged misconduct. Here, Plaintiff's right to be free from the degree of force that Defendant Horton used was not clearly established, as an objectionably reasonable corrections officer in Defendant's position would not have known that his conduct violated the law. Consequently, Defendant Horton should be granted summary judgment on Plaintiff's excessive use of force claim.

Second, Defendant Horton is entitled to summary judgment on the issue of damages, as Plaintiff did not sustain a physical injury in this matter. Because federal law bars the recovery of compensatory damages in actions filed by prisoners without proof of a physical injury, Defendant Horton moves for summary judgment on Plaintiff's claim for damages. Similarly, as Defendant did not use excessive force on Plaintiff, Defendant Horton should be granted summary judgment on Plaintiff's claim for relief for a declaratory judgment in this matter.

*Summary of Facts*

On July 7, 2018, Plaintiff Wilbur was a prisoner housed in a medium security housing unit at the Maine State Prison.  Defendant's Statement of Material Facts ("DSMF") ¶ 1.  Defendant Horton was employed as a corrections officer at the Maine State Prison by the Maine Department of Corrections at that time.  *Id.* ¶ 2.  At approximately 8:15 AM on July 7, 2018, Defendant Horton heard Plaintiff make an offensive and disparaging statement about corrections officers to other prisoners.  *Id.* ¶ 3.  In response, Defendant told Plaintiff to report to his cell.  *Id.* ¶ 7.  Defendant Horton was the only corrections officer in the housing unit, and there were other prisoners present and outside of their cells in the unit.  *Id.* ¶ 4.

Plaintiff first challenged Defendant's verbal order for Plaintiff to report to his cell, but then Plaintiff started walking to his cell when Defendant told him that he needed to comply with the order.  *Id.* ¶ 8.  On his way to his cell, Plaintiff called Defendant derogatory names and directed multiple profanities at Defendant.  *Id.* ¶ 9.  Defendant told Plaintiff to stop walking and to submit to hand restraints, but Plaintiff did not comply with those instructions.  *Id.* ¶¶ 10-11.  Plaintiff continued walking to his cell and told Defendant Horton that if Defendant wanted to handcuff him, Defendant would have to come in and get him.  *Id.* ¶¶ 10-12.  Plaintiff then shut his cell door, and Defendant had to call to ask for assistance and for the cell door to be opened.  *Id.* ¶¶ 12-14.

When Plaintiff's cell door opened, Defendant told Plaintiff to turn around and submit to hand restraints.  *Id.* ¶ 15.  Plaintiff put his shoes on and started walking towards Defendant.  *Id.* ¶ 16.  Defendant pulled out his can of O.C. spray and told Plaintiff to turn around.  *Id.* ¶ 17.  Plaintiff then turned around and put his hands behind his back.  *Id.* ¶ 18.  Defendant was able to place hand restraints on Plaintiff, but Plaintiff continued to call Defendant derogatory names and profanities.  *Id.* ¶ 19.  Defendant Horton walked Plaintiff out of his cell, and Plaintiff repeatedly turned his body

towards Defendant and continued calling Defendant derogatory names.  *Id.* ¶ 20.  Defendant continued to warn Plaintiff to stop resisting or Defendant was going to have to place Plaintiff against the wall.  *Id.* ¶¶ 21-22.  Plaintiff then turned his body towards Defendant again and called Defendant a "joke," and Defendant turned Plaintiff to the left towards the wall.  *Id.* ¶¶ 25-26.

Plaintiff then leaned and moved his body forward and placed himself on the wall, and Defendant used his body to maintain Plaintiff's position on the wall until another officer arrived.  *Id.* ¶¶ 27-28.  Defendant did not hit or "smash" Plaintiff's head on the wall.  *Id.* ¶ 29.  Defendant used force against Plaintiff because Plaintiff would not comply with Defendant's verbal commands and Plaintiff continued to physically resist Defendant.  *Id.* ¶ 33.  Defendant Horton acted to maintain order and security in the prison and to manage the situation.  *Id.* ¶ 34.  Defendant did not observe any signs of injury to Plaintiff, and Plaintiff did not make any statements to Defendant that he had been injured.  *Id.* ¶¶ 30-31.  Following Plaintiff's statement that Defendant was out to get him and had used excessive force against him, Plaintiff was seen by medical staff at the prison at approximately 9:20 AM, that same day.  *Id*. ¶¶ 32, 35.  Medical staff did not observe any visible signs of injury to Plaintiff, nor did medical see any abrasions, contusions, or lumps on Plaintiff's head.  *Id.* ¶ 36.  Additionally, Plaintiff denied any dizziness, vision issues, or loss of consciousness during that visit.  *Id.* ¶ 37.  Moreover, prior to this incident, Plaintiff had been experiencing headaches, dizziness, and vision issues.  *Id*. ¶ 38.

## Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Cortes-Rivera v. Dep't of Corr. & Rehab. of Com. of Puerto Rico*, 626 F.3d 21, 26 (1st Cir. 2010).  A non-moving party may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a

trialworthy issue persists." *Iverson v. City Of Boston*, 452 F.3d 94, 98 (1st Cir. 2006). A nonmovant, however, "cannot rely on speculation to avoid summary judgment." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 136 (1st Cir. 2013); *see also Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) ("Conclusions that rest wholly on speculation are insufficient to defeat a motion for summary judgment.").

### Argument

### I. Defendant Horton Is Entitled to Qualified Immunity on Plaintiff's § 1983 Claim

In Plaintiff's amended complaint, Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against Defendant Horton, alleging that Defendant used excessive force against him in violation of the Eighth Amendment. In a § 1983 claim, a government official may raise the defense of qualified immunity to seek "protection from civil damages liability for actions taken under color of state law." *Gray v. Cummings*, 917 F.3d 1, 9 (1st Cir. 2019). *See also Taylor v. Barkes*, __ U.S. __, 135 S. Ct. 2042, 2044 (2015). When such a defense is raised, the government official is entitled to qualified immunity "when his actions, though causing injury, did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 10 (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 154 (1st Cir. 2018)) (quotation marks omitted). The protection afforded by qualified immunity "attaches to all but the plainly incompetent or those who knowingly violate the law." *Gray*, 917 F.3d at 9-10 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (quotation marks omitted).

To determine whether a government official is entitled to qualified immunity, a court must engage in a two-part analysis:

> The court must determine whether the defendant violated the plaintiff's constitutional rights and then must determine whether the allegedly abridged right was "clearly established" at the time of the defendant's claimed misconduct.

*Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). The second part of the qualified immunity analysis has two components:

> First, the plaintiff must identify either "controlling authority" or a "consensus of cases of persuasive authority sufficient to send a clear signal to a reasonable official that certain conduct falls short of the constitutional norm.
>
> Second, the plaintiff must demonstrate that an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law.

*Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017)) (citation and quotation marks omitted).

In this matter, Defendant Horton is entitled to qualified immunity with respect to Plaintiff's excessive use of force claim, as Defendant's actions did not violate Plaintiff's rights under the Eighth Amendment, nor did Defendant's conduct violate any clearly established law relating to the application of the Eighth Amendment. For those reasons, Defendant Horton respectfully moves for this Court to enter summary judgment in his favor.

### A. Defendant Horton Did Not Violate Plaintiff's Rights

With respect to the first part of the qualified immunity analysis, this Court must "determine whether the defendant violated the plaintiff's constitutional rights." *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted). In the context of an Eighth Amendment claim for excessive use of force, the relevant inquiry is whether Defendant Horton violated Plaintiff's constitutional right to be free from cruel and unusual punishment.

The Eighth Amendment guarantees an individual the right to be free from cruel and unusual punishment. U.S. Const. amend. VIII; *see Ingraham v. Wright*, 430 U.S. 651, 664-71 (1977) (discussing the history and parameters of the Eighth Amendment's prohibition on cruel and unusual punishment). It is well-established that "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth

Amendment." *Ingraham*, 430 U.S. at 670 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (citation omitted)); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."). Consequently, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010). *See also Calabria v. Dubois*, No. 93-1742, 1994 WL 209938 (1st Cir. 1994) (*unpublished*) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted) ("That not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' suggests that merely superficial injury permits a reliable inference that the accompanying force was not 'harmful enough,' and is constitutionally *de minimis.*").

A claim based on cruel and unusual punishment "has two components – one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019) (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)). With respect to the subjective prong, the issue "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Staples*, 923 F.3d at 13 (quoting *Whitley*, 475 U.S. at 320–21). To satisfy the objective prong, the plaintiff must show that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Staples*, 923 F.3d at 13 (quoting *Hudson*, 503 U.S. 1, 8 (1992)).

In addition, in evaluating whether a plaintiff has shown that a prison official violated a constitutional right by using excessive force, a court may consider the following relevant factors:

> [T]he extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials, the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response.

*Staples*, 923 F.3d at 13 (quoting *Whitley*, 475 U.S. at 321).  Based on a review of those factors, a court may draw inferences "as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.  Similarly, a prison official's conduct "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* at 319.

Furthermore, the Supreme Court has recognized that prison administrators are entitled to wide-ranging deference with respect to measures taken to preserve internal order and discipline in the prison and to maintain institutional security. *Id.* at 321-22.  That deference has been extended to a court's review of "prison security measure[s] taken in response to an actual confrontation with riotous inmates" and "prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline." *Id.* at 322.  Although that judicial deference will not "insulate from review actions taken in bad faith and for no legitimate purpose, . . . it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice." *Id.*

In the *Whitley* case, the Supreme Court considered an excessive use of force claim in the context of reviewing a ruling on a motion for a directed verdict.  *Id.*  There, the Supreme Court ruled that a court "must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives," and further concluded that "[u]nless it appears that the evidence, viewed in the light most favorable to

the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." *Id.*

In *Staples*, the First Circuit affirmed the grant of summary judgment for a corrections officer in an excessive use of force case where a prisoner claimed that the officer had pushed him into a pillar, allegedly causing the prisoner to hit his head on the wall. *Staples*, 923 F.3d at 13-16. In that matter, the corrections officer testified that he had pushed the prisoner against a pillar in order to restrain him after the prisoner had ripped up a form in front of the officer. *Id.* at 11-13. The First Circuit reasoned that there was no dispute that the prisoner's defiance of the officer's orders by "ripping up the statement form could reasonably be thought to present a threat to" the officer's safety. *Id.* at 14 (quoting *Whitley*, 475 U.S. at 323-24). Additionally, the First Circuit noted that the corrections officer testified that he had used force because the prisoner posed a security risk based on defiant conduct and the corrections officer acted to take control of the situation. *Id.* In affirming the grant of summary judgment for the corrections officer, the First Circuit concluded that there was no "reliable inference of wantonness in the infliction of pain" or evidence that the corrections officer acted with malicious and sadistic intent. *Id.* at 14-15.

Here, Defendant Horton did not violate Plaintiff's right to be free from cruel and unusual punishment, as Defendant Horton used limited force in a good faith effort to maintain or restore discipline and order in the prison, and there has been no showing that his intent was malicious and sadistic for the very purpose of causing Plaintiff harm. This incident first arose when Plaintiff made disparaging and offensive remarks about corrections officers to other prisoners. DSMF ¶ 3. At that time, Defendant Horton was the only corrections officer in the housing unit, and there were other prisoners out of their cells in the unit. DSMF ¶ 4. Because of Plaintiff's remarks, Defendant

told Plaintiff to return to his cell.  *Id.* ¶ 7.  Instead of complying with that order, Plaintiff challenged Defendant Horton and proceeded to call him derogatory names.  *Id.* ¶¶ 8-9.

Plaintiff then disregarded Defendant's verbal command to submit to hand restraints and Plaintiff locked himself in his prison cell, causing Defendant to have to request that the door be unlocked.  *Id.* ¶¶ 10-14.  During that interaction, Plaintiff told Defendant Horton that the Defendant would have to come into Plaintiff's cell and get him, defiantly challenging Defendant's authority and impairing Defendant's ability to maintain security and discipline on the unit.  *Id.* ¶ 12.  Despite Defendant's numerous warnings to Plaintiff, advising him to stop turning towards Defendant, Plaintiff continued to disobey Defendant's orders, repeatedly calling Defendant derogatory names and physically resisting the Defendant.  *Id.* ¶¶ 19-25.  Defendant applied only the force necessary to direct Plaintiff towards a wall to await the arrival of another officer for assistance.  *Id.* ¶¶ 26-29, 33-34.  Defendant Horton acted with the intent to manage the situation and in a good faith effort to maintain or restore discipline in the prison.  *Id.* ¶¶ 33-34.  Defendant did not act with malicious and sadistic intent to cause harm to Plaintiff.  *Id.*  Because Plaintiff cannot establish that Defendant acted with the requisite subjective intent to establish an Eighth Amendment violation, Defendant is entitled to summary judgment in this matter.

Moreover, with respect to the objective component of the excessive use of force claim, there is no evidence in the record to suggest that Defendant's use of force was "objectively harmful enough" to establish a constitutional violation.  *Staples*, 923 F.3d at 13.  In this matter, the record evidence demonstrates that Defendant Horton's use of force involved directing or turning Plaintiff towards a wall and holding him there until another officer arrived.  DSMF ¶¶ 25-29.  The amount of force used by Defendant was modest and not wanton.  Defendant was the only corrections officer in the housing unit with other prisoners present and out of their cells.  *Id.* ¶ 4.  Plaintiff's

behavior was escalating, and Plaintiff was defiant and disregarding Defendant's verbal commands. With respect to "the need and the amount of force that was used," Defendant's need to use force was derived from Plaintiff's defiant conduct and physical resistance, along with Defendant's need to maintain order and discipline in the prison, and the amount of force used was modest.

Before using this limited amount of force, Defendant attempted prophylactic or preventative measures in response to Plaintiff's escalating and defiant conduct, including Defendant's use of verbal commands and instructions in his attempts to gain compliance from Plaintiff. *See* DSMF ¶¶ 7-8, 10-11, 21-23. Defendant did not use force until after Plaintiff repeatedly disobeyed his verbal commands and Plaintiff used physical force against Defendant. *Id.* After Defendant turned Plaintiff towards a wall and maintained him there, Defendant waited for another officer to arrive, instead of allowing Plaintiff's defiant conduct and physical resistance to continue to escalate. *Id.* ¶ 25-28. *See Staples*, 923 F.3d at 13 (identifying "any efforts made to temper the severity of a forceful response" as a relevant factor in making the ultimate determination on excessive force). In addition, Plaintiff was evaluated by medical staff at the prison less than an hour after this incident occurred, and medical staff did not observe any signs of injury to Plaintiff. DSMF ¶¶ 35-36. *See Wilkins*, 559 U.S. at 37 ("The extent of injury may also provide some indication of the amount of force applied."). Because Defendant did not cause Plaintiff the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment, Defendant is entitled to summary judgment on Plaintiff's excessive use of force claim.

Similar to the corrections officer in the *Staples* case, who was entitled to summary judgment when he pushed a prisoner into a pillar for defiant conduct, Defendant Horton used only modest force after Plaintiff defiantly disobeyed numerous verbal commands and called Defendant derogatory names. Plaintiff's defiance of orders and escalating behavior could reasonably be

thought to present a threat to Defendant's safety and to institutional security, and Defendant had to act to take control of the situation.  Furthermore, Defendant acted in a good faith effort to maintain or restore discipline, and there is no evidence that Defendant acted with malicious and sadistic intent to cause Plaintiff harm.  Like the corrections officer in *Staples*, Defendant Horton is entitled to summary judgment, as there is no evidence to support "a reliable inference of wantonness in the infliction of pain."  *Staples*, 923 F.3d at 14-15.

### B.  Any Violation of Plaintiff's Rights Was Not Clearly Established

With respect to the second aspect of the qualified immunity analysis, the Court must determine "whether the allegedly abridged right was 'clearly established' at the time of the defendant's claimed misconduct."  *Gray*, 917 F.3d at 10 (quoting *Conlogue*, 906 F.3d at 154) (quotation marks omitted).  In this matter, Defendant Horton submits that Plaintiff cannot demonstrate that there is sufficient authority to "send a clear signal" to a reasonable official that Defendant's conduct falls below the constitutional norm, and further that Plaintiff cannot show that "an objectively reasonable official" in Defendant's position "would have known that his conduct violated that rule of law."  *Gray*, 917 F.3d at 9-10 (quoting *Alfano v. Lynch*, 847 F.3d at 75).

It has been well-established that the Eighth Amendment prohibits cruel and unusual punishment to prisoners, and that "only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  *Ingraham*, 430 U.S. at 670 (quoting *Estelle*, 429 U.S. at 103 (citation omitted)).  Similarly, there has been a "clear signal" that the "core judicial inquiry" in this context is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

12

However, it cannot be said that there exists authority sufficient to send a clear signal to a reasonable prison official in this matter that Defendant's conduct falls below the constitutional norm. As the Supreme Court stated in *Wilkins*, *de minimis* uses of physical force do not constitute cruel and unusual punishment, just as where a prisoner "complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37-38. Undersigned is aware of no controlling caselaw finding a constitutional violation for applying a similar level of force to a verbally and physically defiant prisoner. Therefore, there is no indication that an objectively reasonable corrections officer in Defendant's position "would have known that his conduct violated" clearly established law. *Gray*, 917 F.3d at 9-10 (quoting *Alfano*, 847 F.3d at 75) (citation and quotation marks omitted). The evidence demonstrates that Defendant acted in a good faith effort to maintain or restore discipline in a prison, and therefore his actions are entitled to qualified immunity in this matter. Because Plaintiff's allegedly abridged right to be free from the degree of force that Defendant used was not clearly established, Defendant is entitled to qualified immunity on Plaintiff's excessive use of force claim.

## II. Defendant Horton Is Entitled to Summary Judgment on Plaintiff's Damages Claim

Pursuant to the Prison Litigation Reform Act, a prisoner's relief in federal civil actions is limited. *See* 42 U.S.C.A. § 1997e(e). Specifically, section 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C.A. § 1997e(e).

The First Circuit has yet to decide whether the limitation in section 1997e(e) on damages applies to constitutional claims. *See Kuperman v. Wrenn*, 645 F.ed 69, 73 n.5 (1st Cir. 2011). However, this Court has addressed the application of section 1997e(e) in the context of a prisoner's

federal action alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act. *Robinson v. Landry*, No. 2:15-CV-58-DBH, 2015 WL 4077297, at *2 (D. Me. July 6, 2015). In the *Robinson* matter, this Court dismissed a prisoner's claim for damages where the prisoner sought relief for anxiety and emotional distress but had not alleged a physical injury. *Id.*; *see also Schoff v. Fitzpatrick*, No. 2:16-CV-00609-NT, 2018 WL 1185499, at *9 (D. Me. Mar. 7, 2018), *report and recommendation adopted*, No. 2:16-CV-609-NT, 2018 WL 4473093 (D. Me. Sept. 18, 2018) (where this Court reasoned that although the First Circuit had not decided whether section 1997e(e) barred compensatory damages for constitutional claims, "persuasive authority suggests that Plaintiff cannot recover monetary relief based on Plaintiff's mental or emotional distress.").

In this matter, Plaintiff has not alleged a physical injury sufficient to withstand summary judgment on the issue of damages. Pursuant to section 1997e(e), Defendant submits that Plaintiff's recovery is limited as he has not established that a physical injury occurred. Plaintiff was medically evaluated at the prison on July 7, 2018, less than an hour after the incident giving rise to Plaintiff's excessive use of force claim, and Plaintiff was observed to have no signs of injury. DSMF ¶¶ 35-37. Specifically, medical staff noted that Plaintiff did not have any abrasions or contusions on his head, despite Plaintiff's claim that Defendant hit his head on a concrete wall. *Id.* ¶ 36. Additionally, Plaintiff denied any dizziness, vision issues, or loss of consciousness during that visit. *Id.* ¶ 37. Moreover, prior to this incident, Plaintiff had reported headaches, dizziness, and vision issues to medical staff, and he was being treated at the prison for those issues as early as 2016. *Id.* ¶ 38. For the above reasons, Defendant respectfully moves for summary judgment on Plaintiff's claim of damages, as there exists no genuine issue of material fact.

### III. Plaintiff Is Not Entitled to a Declaratory Judgment

Plaintiff also appears to seek relief in the form of a declaratory judgment against Defendant in this matter. (Docket # 1, 12.) Because Defendant did not violate Plaintiff's constitutional rights, as argued more extensively above, Plaintiff's request for equitable relief must fail. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *United Public Workers of American (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) (holding that because federal courts "do not render advisory opinions," there must exist "concrete legal issues, presented in actual cases, not abstractions" for the court to adjudicate a constitutional issue and afford declaratory relief); *see also Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 8–9 (1st Cir. 2012) (holding that where the plaintiff's constitutional claims had been "correctly tossed" on summary judgment, the plaintiff "had no basis for any relief at all against the defendants, let alone declaratory and injunctive relief"); *Lopez v. Garriga*, 917 F.2d 63, 70 (1st Cir. 1990) (holding that "once the jury rejected plaintiff's constitutional claim, he was left without any sound basis for equitable redress").

As Defendant did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, no "substantial controversy" exists to warrant the issuance of a declaratory judgment, and the award of such a judgment would afford no meaningful relief to Plaintiff. *Golden*, 394 U.S. at 108 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) (quotation marks omitted) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy any reality to warrant the issuance of a declaratory judgment."); *see also Union de Empleados de Muelles de Puerto Rico, Inc. v. Int'l Longshoremen's Ass'n*, 884 F.3d 48, 58 (1st Cir. 2018) ("A declaratory judgment is often a means to an end rather than an end in and of itself, as its purpose is to determine the rights and obligations

of the parties so that they can act in accordance with the law."). Therefore, Defendant submits that he is entitled to summary judgment on Plaintiff's claim for declaratory relief in this matter.

## Conclusion

For the reasons stated above, Defendant Horton respectfully requests that the Court enter summary judgment in his favor as to Plaintiff's claim of excessive use of force. In addition, Defendant moves for summary judgment on the issue of damages and respectfully submits that Plaintiff's claim for damages is barred by federal law. Moreover, Defendant is further entitled to summary judgment on Plaintiff's claim for a declaratory judgment in this matter.

Respectfully submitted,

AARON M. FREY
Attorney General

July 29, 2019

  /s/ Alisa Ross
Alisa Ross, Bar No. 4688
Assistant Attorney General
Office of Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel. (207) 626-8800
*Alisa.Ross@maine.gov*

## NOTICE

Plaintiff's attention is directed to Local Rule 56(c), which requires that a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts in conformance with the requirements of Local Rule 56(c). Facts contained in the moving party's statement of material facts may be deemed admitted unless properly controverted.

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 29, 2019, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notice of filing to any and all registered counsel of record.  To my knowledge, there are no parties or attorneys participating in this case who are not registered with CM/ECF.


July 29, 2019                                                    /s/ Alisa Ross
                                                                 Alisa Ross, Bar No. 4688
                                                                 Assistant Attorney General
                                                                 *Alisa.Ross@maine.gov*