UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES SCOTT WILBUR, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:18-cv-00255-NT |
| | ) | |
| JOSEPH FITZPATRICK, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON DEFENDANT HORTON'S
MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff, an inmate at the Maine State Prison, alleges that Defendant

Charles Horton, a former guard at the prison, used excessive force against him during an

incident at the prison on July 7, 2018. (Complaint, ECF No. 1; Amendments to Complaint,

ECF No. 12.) The matter is before the Court on Defendant's motion for summary

judgment. (Motion, ECF No. 39.)

Following a review of the summary judgment record and after consideration of the

parties' arguments, I recommend the Court grant Defendant's motion.

**PROCEDURAL HISTORY**

On June 29, 2018, Plaintiff filed a complaint against more than twenty defendants

alleging cruel and unusual punishment, violations of procedural due process, and unlawful

search and seizure. (Complaint, ECF No. 1.) On July 19, 2018, Plaintiff amended his

complaint to add claims based on an alleged use of excessive force and retaliation.

(Amendments to Complaint, ECF No. 12; Order, ECF No. 13.)

On October 12, 2018, the Court dismissed most of the claims against most of the named defendants. (Order, ECF No. 17.) The Court determined, however, that Plaintiff's allegations against Defendants Harold Abbott, Joseph Theriault, Eric Bueno, Shane Blakely, and Troy Ross regarding the imposition of a $100 fine following a disciplinary proceeding could proceed. (*Id.*) The Court also permitted Plaintiff to proceed on his excessive force claim against Defendant Horton and on his retaliation claim against Defendants Horton and Casey Chadwick. (*Id.*) The Court ordered Plaintiff to provide information regarding his efforts to exhaust the available administrative remedies. (*Id.*)

On November 20, 2018, Plaintiff filed documentation of his efforts regarding the prison grievance process. (Grievance Records, ECF No. 18-1.) On November 27, 2018, the Court concluded that Plaintiff could pursue his claims based on the $100 fine and excessive force, but the Court dismissed the retaliation claim because Plaintiff did not produce evidence that he exhausted the available remedies for that claim. (Order, ECF No. 19.)

Defendants Horton, Ross, Abbott, Blakely, Bueno, and Theriault filed a motion for summary judgment. Defendant Horton argued that Plaintiff had failed to exhaust his administrative remedies with respect to his excessive force claim; the remaining defendants argued that Plaintiff's due process claim regarding the imposition of the fine was not supported by the factual record. (Motion, ECF No. 24.) The Court granted summary judgment to Defendants on Plaintiff's due process claim, but the Court denied Defendant Horton's motion on the excessive force claim because material issues of fact existed

regarding whether Plaintiff had exhausted his administrative remedies. (Recommended Decision, ECF No. 29; Order Affirming Recommended Decision, ECF No. 30.)

Defendant Horton subsequently filed the instant motion for summary judgment on the merits of Plaintiff's excessive force claim. (ECF No. 39.)

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, a trial-worthy controversy exists and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b)–(d) require the specific citation to record evidence. In addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules.[1] *Ruiz Rivera v. Riley*, 209 F.3d 24, 27–28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me.

---

[1] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that '[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

Loc. R. 56(c). If an additional statement is introduced by the non-moving party, the moving party must file a reply statement in which it admits, denies, or qualifies the non-moving party's additional statements by reference to each numbered paragraph, with citations to supporting evidence. D. Me. Loc. R. 56(d).

"Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

Nevertheless, the factual assertions contained in the verified pleadings and affidavits filed by a pro se litigant generally will be considered in the review of a summary judgment motion. That is, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128 – 30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiffs' opposing affidavits and opposition papers are to be read 'liberally.'" (citing *Posadas de Puerto Rico*, *Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-83 (D. Me. 2007).

## FACTUAL BACKGROUND[2]

Plaintiff is incarcerated at the Maine State Prison. (ECF No. 1, ¶ 2; DSMF ¶ 1.) In July 2018, he was assigned to a medium security housing unit. (DSMF ¶ 1.) Defendant was a correctional officer at the Maine State Prison. (*Id*. ¶ 2.)

At approximately 8:15 a.m. on July 7, 2018, Defendant heard Plaintiff make a derogatory statement to other prisoners about corrections officers. (*Id.* ¶ 3.) Defendant was the only corrections officer in the housing unit at that time; other prisoners were present and outside of their cells. (*Id.* ¶ 4.) Pursuant to Maine Department of Corrections policy, a prisoner may not engage in disorderly behavior or provocation. (*Id.* ¶ 5.) Defendant considered Plaintiff's statement to be contrary to prison rules. (*Id*. ¶ 6.) In response to Plaintiff's statement, Defendant directed Plaintiff to return to his cell. (*Id.* ¶ 7.)

Plaintiff initially challenged Defendant's verbal order, but when Defendant told Plaintiff that he needed to comply, Plaintiff started walking to his cell. (*Id.* ¶ 8.) While walking to his cell, Plaintiff called Defendant derogatory names and directed multiple profanities at Defendant. (*Id.* ¶ 9.) Plaintiff admits to "using profane language against" Defendant. (ECF No. 18-1, PageID #102.) At this point, Defendant directed Plaintiff to

---

[2] The following facts are drawn primarily from Defendant's Statement of Material Facts (ECF No. 40). Plaintiff filed a response in opposition to the motion (ECF No. 47), but he did not file a response to the factual assertions contained in Defendant's statement. Given Plaintiff's failure to respond to the statement of facts, Plaintiff's ability to contest Defendant's factual assertions in the statement of material facts is limited. *See* District of Maine Local Rule 56(f) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.") While the Court typically would consider the assertions contained in a pro se plaintiff's verified complaint, Plaintiff did not sign the complaint under the penalty of perjury.

stop walking and to submit to hand restraints. (DSMF ¶ 10.) According to Defendant, Plaintiff did not comply. (*Id.* ¶ 11.)

Plaintiff entered his cell and told Defendant that if Defendant wanted to handcuff him, Defendant would have to come into the cell and get him. (*Id.* ¶ 12.) Plaintiff then allegedly shut his cell door, causing the door to lock. (*Id.*) Defendant attempted to call another officer for assistance, but he found that his radio battery had died. (*Id.* ¶ 13.) Defendant was able to call for assistance using a phone, however, and asked that Plaintiff's cell door be opened remotely. (*Id.* ¶ 14.) When Plaintiff's cell door was opened, Defendant told Plaintiff to get down from his bed, to turn around, and to submit to hand restraints. (*Id.* ¶ 15.)

Plaintiff got off the bed, put on his shoes, and started to walk toward Defendant. (*Id.* ¶ 16.) Defendant took out his can of pepper spray and ordered Plaintiff to turn around. (*Id.* ¶ 17.) Plaintiff then turned around and put his hands behind his back. (*Id.* ¶ 18.) As Defendant was placing hand restraints on Plaintiff, Plaintiff continued to call Defendant derogatory names and used profanity. (*Id.* ¶ 19.) When Defendant and Plaintiff walked out of the cell and into the unit, Plaintiff turned his body toward Defendant and called him derogatory names while using profanity. (*Id.* ¶ 20.) Plaintiff physically resisted Defendant on approximately four to six occasions as they walked through the unit. (*Id.* ¶ 21.)

While walking with Plaintiff, Defendant warned Plaintiff to stop resisting and to stop turning toward him or he would have to place Plaintiff against the wall. (*Id.* ¶ 22.) Plaintiff did not comply with Defendant's verbal commands and continued physically to resist him. (*Id.* ¶¶ 23-24.)

While the parties dispute how it occurred, the parties agree, that eventually Plaintiff's head made contact with a concrete wall. Defendant asserts that Plaintiff again turned his body toward Defendant and further insulted him. (*Id.* ¶ 25.) Defendant maintains that he turned Plaintiff toward the wall and Plaintiff leaned, moved his body forward, and placed himself against the wall. (DSMF ¶ 26-27.) Plaintiff asserts that Defendant "smashed [his head] off of a concrete wall." (ECF No. 12, ¶ D-2; ECF No. 18-1, PageID #102.) Defendant contends that he did not hit or smash Plaintiff's head on the wall. (*Id.* ¶ 29.)

Defendant asserts that he used force because Plaintiff would not comply with his verbal commands, Plaintiff continued to resist and turn toward him, and Plaintiff's behavior was confrontational and escalating. (*Id.* ¶ 33.) Defendant contends that he did not act with the intent to cause Plaintiff physical harm, but rather his actions were an effort to maintain order in the prison and manage the situation. (*Id.* ¶ 34.)

Defendant did not observe any signs of injury to Plaintiff and, according to Defendant, Plaintiff did not make any statements to Defendant that he was injured. (*Id.* ¶¶ 30-31.) Plaintiff alleges that because of the incident he suffered "significant left side of the head swelling, headaches, vision issues, and nausea." (ECF No. 18-1, PageID #102.) Plaintiff was seen by medical staff at the prison that same day, at approximately 9:20 a.m. (DSMF ¶ 35.) The prison medical provider's notes state that Plaintiff was brought to the clinic for "immediate evaluation" after the incident, complaining of a "mild" headache, with Plaintiff rating it a "3 out of 10." (ECF. No. 40-4, PageID #259.) The medical provider noted that Plaintiff had no "obvious visible injuries, no lumps/abrasions or

contusions anywhere on his head." (*Id*.) Plaintiff denied any loss of consciousness, dizziness, vision changes or mentation issues.[3] (*Id*.) He also denied needing any treatment for his headache. (*Id*. at PageId #260.)

## DISCUSSION

**A. Section 1983**

Pursuant to the federal civil rights statute:

Every person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To maintain a claim under section 1983, a plaintiff must establish: "1) that the conduct complained of has been committed under color of state law, and 2) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Barreto-Rivera v. Medina-Vargas*, 168 F.3d 42, 45 (1st Cir. 1999). Plaintiff asserts that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment and use of excessive force.

---

[3] Prior to July 7, 2018, Plaintiff had reported headaches, dizziness, and vision problems at various times to medical staff at the prison, and he was being treated for those symptoms. (DSMF ¶ 38.)

## *1.      Qualified immunity*

Defendant contends he is entitled to summary judgment because the undisputed facts demonstrate that he is entitled to qualified immunity for the incident.

Government officers are entitled to qualified immunity unless they violate a constitutional right that was "clearly established" when they engaged in the conduct at issue. *Hunt v. Massi*, 773 F.3d 361, 367 (1st Cir. 2014). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). "This strain of immunity aspires to 'balance [the] desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive.'" *Cox v. Hainey*, 391 F.3d 25, 29 (1st Cir. 2004) (quoting *Buenrostro v. Collazo,* 973 F.2d 39, 42 (1st Cir. 1992)).

Defendant's assertion of qualified immunity requires the Court to assess: (1) "whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation" and (2) "whether the violated right was clearly established at the time that the offending conduct occurred." *Ford v. Bender,* 768 F.3d 15, 23 (1st Cir. 2014).

Under the first prong of qualified immunity analysis, a court must determine whether a plaintiff has asserted "facts showing … that the official violated a statutory or

constitutional right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Here, Plaintiff claims that Defendant violated the Eighth Amendment by pushing Plaintiff's head into a wall. "'A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components – one subjective, focusing on the defendant's motive for his conduct, and other objective, focusing on the conduct's effect.'" *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019) (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)).

The subjective component focuses on determining "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). Factors relevant to that determination include "'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials,' 'the need for the application of force,' 'the relationship between the need and the amount of force that was used,' 'the extent of the injury inflicted,' and 'any efforts made to temper the severity of a forceful response.'" *Staples*, 923 F.3d at 13 (quoting *Whitley*, 475 U.S. at 321).

The First Circuit's analysis in *Staples* is instructive. In *Staples*, the plaintiff, a prisoner being transferred from one unit to another in a county prison, refused to shave when ordered to do so by the defendant, a sergeant in the receiving unit. 923 F.3d at 10. The defendant gave plaintiff a form to write a statement explaining why he should be exempt from the unit's beard length requirement. *Id*. at 10-11. Visibly upset, the plaintiff took the form and tore it in half. *Id*. at 11. The defendant swiftly pushed the plaintiff against a support pillar to restrain him; another officer cuffed the plaintiff. *Id*. The plaintiff claimed the defendant "slammed him face first into [the] cement pillar." *Id*. After the

plaintiff was escorted to an isolation cell, video footage of the cell showed the plaintiff without any obvious signs of discomfort and without any obvious marks on his forehead. *Id*. A nurse examined the plaintiff later that day after he reported wrist, back and shoulder discomfort. *Id*. She concluded that his wrist function was within normal limits and noted that she did not observe any visible signs of injury to the plaintiff's wrists, back, head, or shoulder. *Id*. The plaintiff did not receive any follow-up medical care. *Id*.

In affirming the order of the District Court's grant of summary judgment, the First Circuit noted that the plaintiff did "not dispute that his 'defiance of [the defendant's] order[s]' by ripping up the statement form 'could reasonably be thought to present a threat to'" the defendant's safety. *Id*. at 14 (quoting *Whitley*, 475 U.S. at 323-24). Similarly, in this case, Plaintiff does not dispute with record evidence Defendant's recitation of the events that preceded the incident. Other than Plaintiff's perception that Defendant was frustrated as the result of Plaintiff's use of profanity and derogatory names, Plaintiff cites no record evidence to challenge Defendant's assertion that he acted due to the safety hazard presented by Plaintiff's escalating behavior. That is, Plaintiff "points to no affirmative evidence that could suffice to rebut" Defendant's claim that "he was prompted to use force to t[a]ke control of the situation" when Plaintiff refused to comply with Defendant's orders. *Staples*, 923 F.3d at 14 (internal quotation marks omitted). The record thus lacks any evidence to support a conclusion other than Defendant reasonably perceived Plaintiff's behavior as escalating and presenting a threat to the safety of Defendant and others, particularly given that Defendant was alone and in the presence of other prisoners. *See, e.g. Stenzel v. Ellis*, 916 F.2d 423, 426 (8th Cir. 1990) (when prisoner refused to comply

with a legitimate order after being warned three times, incident had escalated into a "'disturbance … that indisputably pose[d] significant risks to the safety of inmates and prison staff.''") (quoting *Whitley*, 475 U.S. at 320)).  In short, "this case is not one in which a reasonable jury could conclude … that [the use of force] was wanton based on an inference that there was 'no need for the application of force.'"  *Staples*, 923 F.3d at 14 (quoting *Whitley*, 475 U.S. at 321).[4]

An assessment of whether "'the relationship between the need and the amount of force that was used' supports a finding that the use of force was wanton," *Staples*, 923 F.3d at 14 (quoting *Whitley*, 475 U.S. at 321) also supports a finding that the use of force was a good faith effort to maintain security and safety.

Viewed most favorably to Plaintiff, the record supports the following findings: Defendant pushed Plaintiff against the wall with enough force to cause his head to hit against the wall; although Plaintiff claims that he experienced swelling, headaches, vision issues, and nausea as a result, the medical records show that when Plaintiff was seen by a prison medical provider immediately following the incident, Plaintiff complained only of a mild headache; and the medical provider observed no visible signs of injury anywhere on Plaintiff's head.

---

[4] Plaintiff also does not dispute Defendant's assertion that he warned Plaintiff numerous times to stop ignoring his commands and continuing to turn toward Defendant as they walked through the unit. Defendant thus attempted to "temper the severity" of his eventual forceful response. *See Whitley*, 475 U.S. at 321.

The mere fact that Plaintiff suffered a minor injury in or experienced pain following

the incident cannot support a finding that the force used establishes the necessary

wantonness. As the Supreme Court stated, to constitute

> cruel and unusual punishment, conduct that does not purport to be
> punishment at all must involve more than ordinary lack of due care for the
> prisoner's interests or safety….. It is obduracy and wantonness, not
> inadvertence or error in good faith, that characterize the conduct prohibited
> by the Cruel and Unusual Punishments Clause…. The infliction of pain in
> the course of a prison security measure, therefore, does not amount to cruel
> and unusual punishment simply because it may appear in retrospect that the
> degree of force authorized or applied for security purposes was unreasonable,
> and hence unnecessary in the strict sense.

*Whitley*, 475 U.S. at 319 (citations omitted). In this case, Plaintiff's unsworn description

of the incident is insufficient to generate a triable issue as to the degree of force used.

Simply stated, "'the evidence, viewed in the light most favorable to the plaintiff, [does not]

support a reliable inference of wantonness in the infliction of pain.'" *Staples*, 923 F.3d at

14-15 (quoting *Whitley*, 475 U.S. at 322); *see also*, *Guitron v. Paul*, 675 F.3d 1044, 1046

(7th Cir. 2012) (officer who "twisted" plaintiff's wrist and "slammed" him into a wall did

not act wantonly where officer "did not use any force until [plaintiff] disobeyed a command

that was designed to maintain order within the prison; and, when [the officer] applied

modest force, [plaintiff] remained defiant.").

In sum, an assessment of the subjective prong establishes that Defendant is entitled

to qualified immunity. The same assessment demonstrates that Plaintiff also cannot satisfy

the objective prong. To prevail on the objective prong, Plaintiff would have to demonstrate

that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional

violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Given the uncontroverted record

14

evidence, discussed above, of the circumstances that generated the use of force and the degree of force used, the force used was objectively reasonable. Accordingly, Defendant Horton is entitled to summary judgment.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendant Horton's Motion for Summary Judgment (ECF No. 39) and enter judgment in favor of Defendant Horton on Plaintiff's excessive force claim.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 12th day of November, 2019.